

UNITED STATES COURT OF INTERNATIONAL TRADE
ONE FEDERAL PLAZA
NEW YORK, NY 10278-0001

CHAMBERS OF
Claire R. Kelly
    Judge

April 27, 2021

Alan Hayden Price, Esq.
Adam Milan Teslik, Esq.
Christopher Bright Weld, Esq.
Douglas Charles Dreier, Esq.
Enbar Toledano, Esq.
Jeffrey Owen Frank, Esq.
Maureen Elizabeth Thorson, Esq.
Stephanie Manaker Bell, Esq.
Stephen Joseph Obermeier, Esq.
Wiley Rein, LLP
1776 K Street, NW
Washington, DC 20006
Email:      aprice@wiley.law
               ateslik@wiley.law
               cweld@wiley.law
               ddreier@wiley.law
               etoledano@wiley.law
               jfrank@wiley.law
               mthorson@wiley.law
               sbell@wileyrein.com
               sobermeier@wiley.law

John David Henderson, Esq.
Andrea C. Casson, Esq.
Karl Stuart von Schriltz, Esq.
U.S. International Trade Commission
Office of the General Counsel
500 E Street, SW
Washington, DC 20436
Email:      john.henderson@usitc.gov
               andrea.casson@usitc.gov
               karl.vonschriltz@usitc.gov

Matthew Robert Nicely, Esq.
Daniel Martin Witkowski, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP
2001 K Street, NW
Washington, DC 20006-1037
Email:     mnicely@akingump.com
           dwitkowski@akingump.com

Christopher Allan Dunn, Esq.
Daniel Lewis Porter, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW.
Suite 1300
Washington, DC 20006
Email:     cdunn@curtis.com
           dporter@curtis.com

Ned Herman Marshak, Esq.
Max F. Schutzman, Esq.
Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP
599 Lexington Avenue
36th Floor
New York, NY 10022
Email:     nmarshak@gdlsk.com
           mschutzman@gdlsk.com

Eve Qiwei Wang, Esq.
Jordan Charles Kahn, Esq.
Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP
1201 New York Avenue, NW
Suite 650
Washington, DC 20005
Email:     eqwang@gdlsk.com
           jkahn@gdlsk.com

Richard L.A. Weiner, Esq.
Rajib Pal, Esq.
Sidley Austin, LLP
1501 K Street, NW
Washington, DC 20005-1401
Email:     rweiner@sidley.com
           rpal@sidley.com

   Re: *Full Member Subgroup of the American Institute of Steel Construction, LLC v. United States,* Court No. 20-00090

Dear Counsel:

  As you know, oral argument in this case will be held virtually on Thursday, May 6, 2021 at 10 a.m. in Courtroom 1 of the James L. Watson Courthouse of the United States Court of International Trade, One Federal Plaza, New York, NY 10278. The court has examined the parties' submissions and would like counsel to be prepared to address the following issues.

**<u>Adequacy of the Record & Evidentiary Determinations</u>**

**For Plaintiff Full Member Subgroup of the American Institute of Steel Construction, LLC ("Petitioner" or "AISC")**

1. Citing <u>Allegheny Ludlum Corp. v. United States</u>, you argue that the U.S. International Trade Commission ("Commission") failed to satisfy its obligation to request all relevant information. <u>See, e.g.</u>, [AISC's] Memo. Supp. 56.2 Mot. J. Agency R. Confidential Version at 23, Sept. 21, 2020 ECF No. 54 ("AISC's Br.") (quoting <u>Allegheny Ludlum Corp. v. United States</u>, 287 F.3d 1365, 1373 (Fed. Cir. 2002) ("<u>Allegheny</u>")). By determining that quarterly pricing data and pricing data for initial bids on projects involving the sale of fabricated structural steel ("FSS") would not be useful to its analysis, isn't the Commission determining that the information is not relevant? Why is it unreasonable for the Commission to decline to request more information that it believes is unhelpful?

2. You argue that the Commission's conclusion that large annual variations within particular average unit value ("AUV") categories suggest that the data can vary based on particular projects reported in a given year is speculative. <u>See</u> [AISC's] Reply Br. at 14–15, Jan. 27, 2021, ECF No. 65 ("AISC's Reply Br."); Confidential Views of the Commission at 58 n. 280, CD 1052, doc. number 705140 (Mar. 17, 2020) ("Views").[1] Why isn't the Commission's conclusion simply the result of a reasonable inference with which you disagree?

---

[1] On June 22, 2020, Defendant filed indices to the public and confidential administrative records underlying the Commission's final determination. These indices are located on the docket at ECF Nos. 39 and 40, respectively. All references to documents from the administrative record are identified by the numbers assigned by the Commission in the June 22nd indices, and are preceded by "PD" or "CD" to denote public or confidential documents, respectively.

**For Defendant and Defendant-Intervenors**

1. In addition to pricing data from final bid offers for projects involving the sale of FSS, Petitioner requested that the Commission collect data from initial offers because the bidding process is "a multiple round process in which fabricators are often forced to reduce their prices in response to purchaser demands[.]"  Petitioner's Cmts. on Draft Questionnaires at 11, CD 314, doc. number 687029 (Sept. 3, 2019) ("Petitioner's Questionnaire Cmts."). Defendant argues that "the Commission reasonably chose to collect final bid data, which are more likely to be comparable between bids on an 'apples to apples' basis[,]" and that Plaintiff "appears to suggest that the Commission must collect all data requested by the parties, irrespective of how useful that information is likely to be[.]"  Def.'s Memo. Opp'n Pl.'s Mot. J. Agency R. at 38, Dec. 4, 2020, ECF No. 58 ("Def.'s Br.").  Where does the Commission state this rationale?

2. The Commission also declined to collect additional quarterly price data for sales of FSS from U.S. producers and importers/foreign producers because Plaintiff's comments in support of its request for inclusion of such data "did little to address the problems with the pricing product data that the Commission had encountered in the preliminary phase of the investigations." Views at 53 & n. 254; see also id. at 53 n. 256; Def.'s Br. at 27–30.

    a. Why does it matter whether Plaintiff addressed problems with pricing product data in the preliminary phase?  Please explain how problems with the preliminary pricing data relate to the Commission's decision not to request additional pricing data for the final phase of its investigation.

    b. Plaintiff in its comments acknowledged that there might be limitations with pricing data, but proposed that the Commission request additional data because it "would nevertheless be useful to corroborate or complement bid data." Petitioner's Questionnaire Cmts. at 8.  How does the Commission reasonably address Plaintiff's submission? See id. at 9 (proposing a broadly defined pricing product category for the questionnaire in order to "maximize the flexibility of the Commission's analysis and ensure that all information required for apples-to-apples comparisons with the simplified pricing data, and all other scenarios, is on the record of the investigation."); see also AISC's Br. at 23 (quoting Allegheny, 287 F.3d at 1373) (arguing that the Commission has an affirmative obligation to seek out all relevant information).

3. How do you respond to Plaintiff's argument that the Commission's reasoning in support of its refusal to collect additional information is speculative and inconsistent with previous investigations where the Commission was able to use at least some imperfectly comparable data to make determinations regarding underselling and price effects?  AISC's Reply Br. at 2–3 (citing Certain Welded Large Diameter Line Pipe From Japan at V-6 n.9, V-11–V-12, USITC Pub. 3464, Inv. No. 731-TA-919 (Nov. 2001), available at https://www.usitc.gov/publications/701_731/pub3464.pdf (last visited Apr. 26, 2021); Clad Steel Plate from Japan at 12–13 n.70, V-3–V-4, USITC Pub. 2972, Inv. No. 731-TA-739 (June 1996), available at https://www.usitc.gov/publications/701_731/pub2972.pdf (last visited Apr. 26, 2021); Engineered Process Gas Turbo-Compressor Systems From Japan at 16, V-4, USITC Pub. 3042, Inv. No. 731-TA-748 (June 1997), available at https://www.usitc.gov/publications/701_731/pub3042.pdf (last visited Apr. 26, 2021); Large Power Transformers from Korea at V-5–V-6, USITC Pub. 4346 (Aug. 2012), available at https://www.usitc.gov/publications/701_731/pub4346.pdf (last visited Apr. 26, 2021)) ("In each case . . . the Commission was able to use at least some of the information it collected to make determinations regarding underselling and price effects.").

4. According to Plaintiff, the Commission decided not to assign any probative value to AUV data for FSS—despite being broken into eight specific product and project types—because of "the project-specific nature of FSS production, and the many different types of FSS projects within these relatively broad end-use and product categories[.]"  Views at 58; see also AISC's Br. at 30.  The Commission also cites large annual variations in the AUV data as support for its observation "that differences in AUVs [do not] necessarily reflect differences in FSS prices between subject imports and the domestic like product."  Id. at 58 & n.280.

   a. How does this reasonably address Plaintiff's argument that the Commission's characterization of the data categories as "relatively broad," and resultant dismissal of the AUV data, is inconsistent with the past treatment of narrowly defined AUV data in other cases?  See, e.g., AISC's Br. at 30–31 (citing Multilayered Wood Flooring from China at 29, USITC Pub. 4278, Inv. Nos. 701-TA-476, 731-TA-1179 (Nov. 2011), available at https://www.usitc.gov/publications/701_731/pub4278.pdf (last visited Apr. 26, 2021); Aluminum Foil from China at 30 n.199, USITC Pub. 4771, Inv. Nos. 701-TA-570, 731-TA-1346 (Apr. 2018), available at https://www.usitc.gov/publications/701_731/pub4771.pdf (last visited

> Apr. 26, 2021); Cast Iron Soil Pipe Fittings from China at 32 n.195, USITC Pub. 4812, Inv. Nos. 701-TA-583, 731-TA-1381 (Aug. 2018), available at https://www.usitc.gov/publications/701_731/pub4812.pdf (last visited Apr. 26, 2021)).
>
> Defendant argues that, since "individual projects may have mixed uses and be described by more than one of [the] categories . . . [there was] some uncertainty as to which end-use category a project should be designated for this analysis." Def.'s Br. at 31. Where does the Commission state this? Even if such a rationale is reasonably discernible from the Commission's analysis, how is it supported by substantial evidence?

5. Plaintiff argues that the Commission continued to rely on a mischaracterization of a white paper cited by the Canadian respondents to support a finding that "the estimated cost share of FSS rang[es] from 25 percent to 75 percent, depending on the scope of the project." Views at 57; see also AISC's Br. at 24–25 (citing, inter alia, Post-Conference Br. of The Canadian Institute of Steel Construction and its Members at 2–3, & Ex. 2 at 4, CD 215, doc. number 668771 (Feb. 28, 2019)); AISC's Reply Br. at 11–12. According to Plaintiff, the record generally shows a cost-share estimate for FSS of around 75 percent of an erected steel structure. See, e.g., AISC's Br. at 24 (citing Petitioner's Posthearing Br. at Ex. 2, CD 1001, doc. number 701399 (Feb. 4, 2020)). Why shouldn't the court remand to the Commission for further consideration of this point?

## Underselling

**For Plaintiff**

1. You state that the Commission's underselling analysis "inexplicably veered away from comparing domestic and subject prices, and into comparing domestic prices with other domestic prices, and subject prices with other subject prices." AISC's Br. at 19–20 (citing Views at 54–55). However, the Commission appears to discuss bids between suppliers of subject imports and suppliers of the domestic like product. See, e.g., Views at 54 ("In seven projects, a higher total bid from a U.S. supplier was successful against a lower bid from a subject supplier."); id. at 54–55 ("Moreover, in two other projects where a U.S. producer was successful against competition from subject bidders, the prevailing U.S. bidder won the bid despite a lower total bid from another U.S. producer."). Is your statement correct?

2. "In evaluating the effect of imports[,]" section 771(7)(C)(ii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(7)(C)(ii) (2018)[2] instructs that the Commission consider whether there has been "significant price underselling" and whether "the effect of imports . . . otherwise depresses prices to a significant degree or prevents price increases[.]"

    a. Why is it inconsistent with the statute for the Commission to collapse its underselling analysis into a general analysis of the price effects of subject imports?  See AISC's Reply Br. at 8; but see 19 U.S.C. § 1677(7)(C)(ii).

    b. To the extent there is any ambiguity in the statute, why is it unreasonable for the Commission to consider whether or not bid award outcomes are price-determinative when analyzing whether there is significant underselling? See Views at 52–55.  Why would that read 19 U.S.C. § 1677(7)(C)(ii)(II) out of the statute? See AISC's Reply Br. at 8; see also, e.g., Views at 60–62 (separately considering whether there is evidence of price depression).

3. Although you acknowledge that "a factual finding was made," you continue to assert that the Commission imposed a lowest price requirement and that the determination that there is no significant underselling is based "not on a 'limited correlation' between lowest prices and actual sales . . . [but] the lack of perfect correlation." AISC's Reply Br. at 7.

    a. Where does the Commission state that it seeks a perfect correlation?

    b. In light of the paragraph preceding the Commission's statement that "while there is some correlation between being the lowest total bidder and being the successful bidder, lowest total bids do not always win the sale[,]" Views at 55, why should the court conclude that the Commission imposed a lowest cost requirement? See id. at 54–55.  Isn't it instead the case that the Commission found that the lack of correlation between lowest total bids and prevailing bids is a limitation to the total bid data?

    c. Assuming the Commission's statement is a finding (not a requirement), isn't the Commission's judgment regarding what strength of correlation between lowest prices and sales is necessary to demonstrate "significant

---

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

      underselling" entitled to substantial deference? Why is your argument not a request for the court to re-weigh the evidence?

**Defendant and Defendant-Intervenors**

1. How do you respond to Plaintiff's argument that, in finding that the total bid data is limited by the fact that the lowest total bid does not always prevail, the Commission's determination marks an unexplained departure from agency practice? See AISC's Br. at 17–21; see also AISC's Reply Br. at 6–7.

2. Your defense of the Commission's analysis of the total bid data appears to turn on your interpretations of the word "significant" in the statute. See Def.'s Br. at 15 (citing 19 U.S.C. § 1677(7)(C)(ii)(I)); [GDLSK Respondents'] Resp. Opp'n Pl.'s Mot. J. Agency R. Confidential Version at 12, Dec. 30, 2020, ECF No. 59 ("GDLSK's Br.") (citing U.S. Steel Corp. v. United States, 28 CIT 1937, 1939–41, 350 F. Supp. 2d 1276, 1278–80 (2004) ("U.S. Steel Corp.")).

    a. Where does the Commission offer its interpretation or invoke it as part of its analysis?

    b. Citing U.S. Steel Corp., GLDSK respondents[3] suggest that, when analyzing whether there is "significant" underselling, the Commission considers "how the subject imports effect {sic} the prices of the domestic like product." GDLSK's Br. at 12 (quoting U.S. Steel Corp., 28 CIT at 1940–41, 350 F. Supp. 2d at 1278–80). Didn't U.S. Steel Corp. address the relationship between underselling and material injury?

**Captive Production**

**For Plaintiff**

1. You argue that Defendant and Defendant-Intervenors NCI Group, Inc. ("NCI"), Cornerstone Building Brands and Blue Scope Buildings North America's ("BlueScope") explanation of the Commission's captive production determination is a post hoc rationalization because the Commission's analysis

---

[3] "GLDSK respondents" refers to Defendant-Intervenors Jinhuan Construction Group Co., Ltd.; Wison (Nantong) Heavy Industry Co., Ltd.; Shanghai Matsuo Steel Structure Co., Ltd.; Yanda (Haimen) Heavy Equipment Manufacturing Co., Ltd.; Shanghai Cosco Kawasaki Heavy Industries Steel Structure Co., Ltd.; Modern Heavy Industries (Taicang) Co., Ltd.; Dickerson Enterprises, Inc.; and Steel Construction Group, LLC.

"said nothing about" whether the domestic like product is subject to "further internal processing[.]" AISC's Reply Br. at 23–24. Doesn't the Commission's view that "[a]ggregation of components, without any assembly by the domestic producer, is not tantamount to a downstream product 'produced' from in-scope articles'" contemplate the position that the component in-scope articles are not subject to further processing? See Views at 43 & n. 188 (citing Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 852 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4185–86).

2. Regardless, you argue that the Commission's position fails to consider the significant processing that goes into producing pre-engineered metal building ("PEMB") systems kits. AISC's Reply Br. at 24–25 (citing AISC's Br. at 47–48). Doesn't your argument conflate the Commission's view that domestic FSS producers aggregate and sell component parts of PEMB kits with your view that FSS producers are manufacturing a downstream product? How does your argument show that the Commission's determination is unreasonable?

3. Given the Commission's position that domestic FSS producers sell components of PEMBs for assembly by end-use purchasers, rather than downstream articles, why is it unreasonable that the Commission also declines to consider captive consumption as a condition of competition? See Views at 43 n. 189. Assuming the Commission's interpretation of the statute is correct, what evidence do you cite demonstrating captive consumption?

## Material Injury & Adverse Effects

### For Plaintiff

1. With respect to the Commission's decision to include BlueScope's and NCI's data, you argue that the Commission punted knowing that there was a dispute over whether components in BlueScope's and NCI's PEMBs were FSS, effectively permitting the parties to define out-of-scope merchandise for themselves. See AISC's Br. at 41, 44–45. Isn't it the case that the Commission relied on the staff's views that BlueScope's and NCI's reported data were within scope? See Views at 63–64 n.304. Why isn't that reasonable?

### For Defendant and Defendant-Intervenors

1. How do you respond to Plaintiff's position that, notwithstanding your submissions regarding the definition of the domestic like product, the Commission failed to render a determination as to whether products included in BlueScope's and NCI's data were unambiguously covered by the scope of the

investigation?  See AISC's Reply Br. at 18–22.  Where does the Commission explain its decision to allow BlueScope and NCI to report the production of FSS sold as components of complete PEMB kits?

                              Sincerely,

                              /s/ Claire R. Kelly
                              Claire R. Kelly, Judge

Cc: Steve Taronji
      For docketing